## Continuation in Support of Criminal Complaint

I, Theodore Westra, being duly sworn, state as follows:

## I.      Introduction

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), assigned to the ATF Field Office in Grand Rapids, Michigan since January of 2015.  Prior to that, I was a Drug Enforcement Administration (DEA) Task Force Officer for 6 years and had been a State of Michigan Certified Law Enforcement officer since 1998.

2.      During my tenure as a law enforcement officer, I have participated in investigations of unlawful drug trafficking, firearm possession, firearm trafficking, machine gun possession, and money laundering and, among other things, have conducted or participated in surveillance, the execution of search warrants, debriefings of informants, reviews of taped conversations and drug records.  Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of narcotics proceeds, and the dialect, lingo, and coded language used by narcotics traffickers.

3.      In connection with my duties, I investigate criminal violations of the federal and state firearm offense and criminal violations of Title 18 of the United States Code, including violations of Title 18, United States Code, Sections 922(g), 922(o) and 924(c).  I also have been involved in the investigation of violations of the controlled substance laws, including, but not limited to, conspiracy and attempt to

1

possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 846; possession with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); use of communication facilities to facilitate drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); and offenses involving money laundering as well as conspiracy and attempt to do the same, in violation of Title 18, United States Code, Sections 1956 and 1957.

4.     Because this Continuation is for the limited purpose of establishing probable cause to support the Criminal Complaint, it contains only a summary of relevant facts.  I have not included each and every fact known to me concerning the individuals and events described in this Continuation.  Nor am I seeking charges for every violation of federal controlled substances and firearm laws for which I believe has been committed in the investigation.  This Continuation is made for the purpose of establishing probable cause that TRAVON DESHAUN-RODERICK MANSKER committed the crimes of possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), possession of a machine gun in violation Title 18, United States Code, Section 922(o), and felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1).

5.     The statements contained in this Continuation are based in part on: (a) my personal participation in this investigation; (b) information provided by other federal and state law enforcement officers, including members of ATF, DEA, the United States Department of Homeland Security Investigations (HSI), and the Battle

2

Creek Police Department (BCPD); (c) laboratory analysis reports; (d) surveillance reports; (e) criminal history records; (f) information from a confidential informant; and (g) my training and experience and the training and experience of other law enforcement agents.

## II.    Probable Cause

### A.   Background

6.     MANSKER is a 25-year-old Battle Creek resident.  He was convicted of felony controlled substance delivery / manufacture marijuana in violation of MCL § 333.7401 (2016) and misdemeanor domestic violence in violation of MCL § 750.812 (2014).

7.     As a felon, MANSKER is not permitted under federal law to possess firearms.  Based on my training, experience, and familiarity with the investigation, I also believe that MANSKER knew he had been convicted of a felony.

8.     On April 26, 2023, the Honorable Phillip J. Green, United States Magistrate Judge for the Western District of Michigan, issued a warrant to search 1252 Michigan Avenue, Battle Creek, MI 49037 (Subject Premises) where MANSKER resides. No. 1:23-mj-00182 (Apr. 26, 2023).

9.     Prior to the search, investigators were able to determine that MANSKER resided at Subject Premises in a variety of different ways, including, but not limited to:

a.     Since approximately November 2020, MANSKER's driver's license lists Subject Premises as his residence;

b.      Since approximately September 23, 2019, MANSKER has been the account holder for the electricity for Subject Premises through Consumer's Power Company; and

c.      Location information obtained for MANSKER's cell phone with the call number (313) 828-9170 (Subject Device) has placed MANSKER in the vicinity of Subject Premises since March 19, 2023 when investigators first obtained the location information pursuant to a federal search warrant.[1] *See* Nos. 1:23-mj-00115 (Mar. 16, 2023) (PJG); 1:23-mj-00151 (April 13, 2023).  Specifically, location information for Subject Device has put MANSKER in the vicinity of Subject Premises for all or most of the night for a conservative estimate of approximately 28 days in the period from March 19, 2023 through April 27, 2023.

B.  Execution of the Search Warrant at Subject Premises

10.     In the early morning of April 27, 2023, investigators set up to execute the search warrant at Subject Premises.  Location information for Subject Device showed MANSKER arrive at Subject Premises around 3:25 am and remain in the vicinity until approximately 5:54 am.

11.     At approximately 6 am, investigators entered Subject Premises, which was unoccupied at the time.

---

[1] DEA investigators previously received T-Mobile subscriber and toll information for (313) 828-9170, which identified Travon MANSKER and address, 5360 Glen Valley Drive, Apt 3B, Battle Creek, MI 49015 as the subscriber. Information from the Michigan Secretary of States shows that MANSKER ceased living at the 5360 Glen Valley residence in or about 2020.  Based on my training and experience, it is not uncommon for phone companies such as T-Mobile to have outdated subscriber addresses.

12.    When investigators made entry at Subject Premises at approximately 6 am, fresh heat and humidity found in the shower during the entry on April 27, 2023 led DEA agents to believe that the shower had just been used.  Location information from Subject Device was consistent with his arrival at Subject Premises at approximately 3:25 am until approximately 5:54 am.

13.    Subject Premises is a two-story house with a basement.  There are no bedrooms on the ground floor, but rather, a kitchen, living room, dining room, and bathroom.  Three bedrooms were located on the second floor: an east bedroom with an adult-sized bed and other adult clothing; a north bedroom with no bed, and southwest bedroom with a children's bed and other clothing and items associated with a child.  The second floor also contained a bathroom with the aforementioned shower.

14.    Based on my training, experience, and familiarity with the investigation, I believe MANSKER was residing at Subject Premises alone.  I also believe that he possessed the drugs, firearms, ammunition, and paraphernalia described in this Continuation located in the Subject Premises.

15.    In the search of Subject Premises, investigators found fourteen (14) firearms, a firearm silencer, hundreds of rounds of ammunition, 50-round capacity drum magazines, multiple items believed to be machine gun conversion devices (also known as "switches"), approximately 4 kilograms of orange powder that field tested positive for methamphetamine, two manual pill presses, and other evidence.  A photograph of the totality of the items seized from MANSKER's residence is provided below:

5



1.   *The East Second-Floor Bedroom*

16.   The only bedroom in the house with an adult bed—MANSKER's bedroom--was the east second-floor bedroom.   On a desk in that bedroom, investigators located MANSKER's driver's license.   Underneath the desk, investigators located a purple notebook, which appeared to contain detailed notes that I believe, based on my training, experience, and familiarity with the investigation, are "recipes" for mixing and pressing pills.   A photograph of the notebook is provided below:







17.     The east second-floor bedroom also contained a fireplace.  Behind the

fireplace, investigators found a Glock 22 Gen5 .40 caliber pistol with a Glock "switch"

machine gun conversion device installed and loaded with 20 rounds.  Based on my

training and experience, I know this firearm to be manufactured outside of the State

of Michigan.

18.     The Glock 22 had a device that I know, from my training and experience,
to be a "Glock switch."  A photograph of the loaded Glock 22 .40 caliber pistol, with
installed switch, seized from MANSKER's bedroom is provided below:



19.     Switches are devices made either from a polymer or metal that are
installed in the back of a firearm, most typically Glock firearms, and convert the
pistols to "machineguns" as that term is defined under federal law.  According to 26
U.S.C. § 5845(b), "the term 'machinegun' means any weapon which shoots, is designed
to shoot, or can be readily restored to shoot, automatically more than one shot,
without manual reloading, by a single function of the trigger." The same provision
adds that "machinegun" also means "any part designed and intended solely and
exclusively, or combination of parts designed and intended, for use in converting a
weapon into a machinegun." Under this definition, a switch itself is a "machinegun,"

9

even if it is not attached to a firearm. *See United States v. Dodson*, 519 F. App'x 344, 347–349 (6th Cir. 2013).

20.     ATF is not aware of any switches having been produced before May 19, 1986. As a result, switches are governed by the Gun Control Act, 18 U.S.C. § 922(o), which prohibits the transfer or possession of a machinegun manufactured after May 19, 1986.  Such machineguns may be lawfully possessed only by appropriately licensed people who have paid a required Special Occupational Tax and are authorized by the United States or a statutorily recognized subpart.  Based on information and belief, MANSKER, a felon, is not a licensee with the appropriate authorization.

21.     A switch typically has three parts, as shown below:



22.     A switch can be installed with little technical knowledge in approximately one minute by substituting it for the original slide cover plate, as shown below:

 

23.     When a switch is installed on a pistol and the trigger is pulled, the pistol will fire until the trigger is released or the magazine is empty. A Glock pistol affixed with a switch can fire over 1,000 rounds per minute.

2.    *The North Second-Floor Room*

24.     Directly adjacent to MANSKER's bedroom (the east-second floor room), investigators searched a north bedroom.  The bedroom contained no bed and appeared to be where MANSKER mixed his drugs and pressed them into pills.   Investigators located MANSKER's birth certificate in the desk area of the north bedroom. Investigators also located multiple pieces of mail in MANSKER's name on the floor of the closet in the north bedroom.[2]  This room is where the drugs, pill presses, and majority of the firearms were located.

25.     Specifically, investigators found large bags weighing approximately four kilograms of an orange powder substance that field tested positive for methamphetamine on the couch of the north bedroom.  A photograph of the seized drugs is provided below:

---

[2] Investigators found multiple other pieces of mail in MANSKER's name throughout the residence, particularly in the dining area, kitchen, and upstairs rooms.



26.      Among other evidence of drug distribution found in the north bedroom,

in the west closet of the north bedroom, investigators found a silver-colored manual

pill press and a blue color manual pill press.  Based on my training, experience, and

familiarity with the investigation, I know that drug traffickers will use pill presses to

make pills purporting to be legitimate pharmaceuticals.  For example, I believe the

orange powder methamphetamine were being pressed by MANSKER into fake

Adderall pills, which are typically orange in color.  Below are photographs of the pill presses:





27.    In the east crawl space area of the north bedroom, investigators found a black duffle bag containing twelve (12) firearms:

  a.  a Glock 17 9 mm pistol;

  b.  five (5) privately made firearms, model PF940C, 9 mm caliber, with no serial number;

  c.  a Romarm Mini Draco loaded with 30 rounds;

  d.  a Ruger AR-15 model AR-556;

  e.  a Windham Weaponry AR-15 model WW15;

  f.  an American Tactical AR-15 model Omni Hybrid;

  g.  a Savage Arms model MSR-15 with a trigger system conversion kit installed;[3]  and

  h.  a Glock 43 9 mm pistol loaded with 8 rounds.

Based on my training and experience, I know that the above-listed firearms, except for the privately made firearms, were manufactured outside of the State of Michigan.[4] A photograph of these firearms in the black duffle bag is provided below:

---

[3] This may constitute a "machine gun" as defined by 26 U.S.C. § 5845(b).

[4] The privately made firearms may have been manufactured outside of the State of Michigan or may otherwise have affected interstate commerce, but, at this time, I am not seeking charges related to MANSKER's possession of them.



28.    Investigators also located hundreds of rounds of ammunition in the north bedroom, including multiple extension magazines for pistols and a drum magazine for a Glock pistol.  Investigators also found a firearm silencer for the Savage Arms Model MSR-15 firearm listed above, which I believe to be a "firearm silencer" or "firearm muffler" under 18 U.S.C. § 921(a)(24).  Photographs of the ammunition and silencer are provided below:






3.   *Basement*

29.   Finally, in the basement, investigators found a Palmetto State Armory

rifle, model PA-15, installed with a possible force reset trigger, and two 50-round

16

drum magazines, located in a baby's bassinet.⁵  Based on my training and experience, I know that this firearm is manufactured outside of the State of Michigan.   A photograph of the firearm is provided below:



### III.   Conclusion

30.     Based upon the foregoing information, I believe there is probable cause that TRAVON DESHAUN-RODERICK MANSKER committed at least the following offenses:

Count 1: April 27, 2022 (Calhoun County, Michigan) – possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

Count 2: April 27, 2022 (Calhoun County, Michigan) – possession of a

---

⁵ This may constitute a "machine gun" as defined by 26 U.S.C. § 5845(b).

machinegun in violation of 18 U.S.C. § 922(o) for a Glock 22 Gen5 .40 caliber pistol with a Glock "switch" machine gun conversion device installed; and

<u>Count 3</u>: April 27, 2022 (Calhoun County, Michigan) – possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) for nine (9) firearms:

i.     Glock 22 Gen5 .40 caliber pistol with a Glock "switch" machine gun conversion device installed;

ii.     a Glock 17 9 mm pistol;

iii.     a Romarm Mini Draco loaded with 30 rounds;

iv.     a Ruger AR-15 model AR-556;

v.     a Windham Weaponry AR-15 model WW15;

vi.     an American Tactical AR-15 model Omni Hybrid;

vii.     a Savage Arms model MSR-15 with a trigger system conversion kit installed;

viii.     a Glock 43 9 mm pistol loaded with 8 rounds; and

ix.     Palmetto State Armory rifle, model PA-15 with a trigger system conversion kit installed.